NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OTSUKA PHARMACEUTICAL CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> SANDOZ, INC., et al., <br><br> Defendants. | CIVIL ACTION NO. 07-1000 (MLC) <br><br> **MEMORANDUM OPINION ON MOTION FOR AWARD OF ATTORNEY FEES (DKT. 417)** |

**COOPER, District Judge**

## INTRODUCTION

The plaintiff, Otsuka Pharmaceutical Co., Ltd. ("Otsuka"), moves for an award of attorney fees against defendants Teva Pharmaceuticals USA, Inc. ("Teva"), Barr Laboratories, Inc. and Barr Pharmaceuticals, Inc. (collectively "Barr"), Apotex Corp. and Apotex Inc. (collectively "Apotex"), Sun Pharmaceutical Industries, Ltd. ("Sun"), Synthon Holding BV, Synthon BV, Synthon Pharmaceuticals, Inc., and Synthon Laboratories, Inc. (collectively "Synthon"), and Zydus Pharmaceuticals USA, Inc. and Cadila Healthcare Ltd. (collectively "Zydus"). (Dkt. 417.)[1] Those defendants ("the defendants") oppose the motion. (Dkt. 429 – dkt. 432; dkt. 437; dkt. 440.)[2]

---

[1] The Court will cite to Electronic Case Filing System ("ECF") documents by referring to docket entry numbers by the designation of "dkt." Pincites reference ECF pagination.

[2] Otsuka does not seek an award of attorney fees against defendant Sandoz, Inc. ("Sandoz"), as Sandoz stipulated to the infringement of the asserted claims and agreed not to launch its generic product at risk. (Dkt. 453 at 6 n.2.) Otsuka and Sandoz also agreed to waive any claim for willful infringement, exceptional case, attorney fees, or costs against each other. (Id.)

The Court held oral argument on September 30, 2013. (Dkt. 451.) This Court's decision was stayed pending the resolution of two companion cases by the United States Supreme Court. (Dkt. 465; see also dkt. 467.) The parties submitted supplemental briefs and the Court held renewed oral argument on August 13, 2015, in light of the Supreme Court's rulings. (Dkt. 490.) The Court, for the below-stated reasons, will deny the motion for an award of attorney fees.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this action and provides a brief summary of the procedural history here.[3] On October 15, 2007, the Magistrate Judge consolidated several Hatch-Waxman Act cases involving U.S. Patent No. 5,006,528 ("'528 patent"). (Dkt. 76.) Otsuka, the '528 patent holder, alleged that each defendant's Abbreviated New Drug Application ("ANDA") would infringe at least one claim of the '528 patent. (Dkt. 1 at 4.) Prior to trial, Synthon, Sun, and Zydus stipulated to stay their respective actions.[4] Teva, Barr, and Apotex proceeded to trial.

---

[3] The Court's amended memorandum opinion, entered December 15, 2010, provides a detailed overview of the factual background in this action. (Dkt. 392.)

[4] Synthon stipulated to a stay after the Magistrate Judge's consolidation order and the parties' initial pleadings. (Dkt. 429 at 5.) Per Synthon, the stipulation could only be lifted after final judgment and appeals "to resolve Otsuka's infringement allegation (if necessary)." (Id. at 7.) Synthon notes that "[n]o provision was made for lifting the stay to permit further litigation of an allegation of exceptionality or a demand for attorney fees." (Id.) Zydus stipulated to a stay before any responsive pleading was filed. (Dkt. 440 at 5 (sealed).) Sun also entered into a stipulation of infringement, as well as a stipulation to a stay. (Dkt. 452 at 8 (sealed).) Sun asserts that it was "silently and passively on the sidelines while defendants Teva, Barr, and Apotex went to trial." (Id. (sealed).)

2

This Court issued an Order and Final Judgment in favor of Otsuka and against the defendants as to all issues of validity and enforceability of the '528 patent. (Dkt. 393.) Teva, Barr, and Apotex appealed from the Court's holding. On May 7, 2012, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") affirmed the judgment of this Court. See Otsuka Pharm. Co., Ltd. v. Sandoz, Inc., 678 F.3d 1280, 1299–1300 (Fed.Cir. 2012). Otsuka thereafter moved for an award of attorney fees under 35 U.S.C. § 285. (Dkt. 417.)

## DISCUSSION

### I. Applicable Legal Standards

Otsuka seeks attorney fees based on its arguments that the defendants filed baseless Paragraph IV certifications and engaged in unjustified and vexatious litigation. (Dkt. 453 at 10, 24.) After the completion of briefing and oral argument on the motion, but before this Court issued a ruling, the Supreme Court issued its decisions in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S.Ct. 1749 (2014), and Highmark Inc. v. Allcare Health Management System, Inc., 134 S.Ct. 1744 (2014). Octane overruled § 285's fee-shifting framework as set forth by the Federal Circuit in Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc., 393 F.3d 1378 (Fed.Cir. 2005), calling it "inflexible" and "overly rigid." Octane, 134 S.Ct. at 1756.

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane, 134 S.Ct. at 1756. The Supreme Court directed that "[d]istrict courts may

3

determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Highmark Inc., 134 S.Ct. at 1748 (citation omitted). When looking to the totality of the circumstances, the Supreme Court explained that under § 285's fee-shifting framework, courts may consider the following factors: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Octane, 134 S.Ct. at 1756 n.6 (citation omitted). Patent litigants must then prove their entitlement to an award of attorney fees by a preponderance of the evidence, rather than by the previous standard of clear and convincing evidence. See id. at 1758 ("Indeed, patent-infringement litigation has always been governed by a preponderance of the evidence standard.")

### A. Substantive Strength of the Party's Litigating Position

"A party's position on issues of law ultimately need not be correct for them to not 'stand[] out,' or be found reasonable." SFA Sys., LLC v. Newegg, Inc., 793 F.3d 1344, 1348 (Fed.Cir. 2015) (citation omitted). The correctness or success of the parties' arguments at trial is not dispositive in assessing the strength of their arguments. See id. Rather, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." See Octane, 134 S.Ct. at 1757.

"[W]here a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims." Small v. Implant Direct Mfg. LLC, No. 06-683, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014) (noting that while plaintiff's arguments regarding patent validity were not ultimately persuasive, they were

4

not objectively baseless), aff'd, 609 Fed.Appx. 650 (Fed.Cir. 2015); see EON Corp. IP Holdings LLC v. Cisco Sys., Inc., No. 12-1011, 2014 WL 3726170, at *5–6 (N.D. Cal. July 25, 2014) (holding that while plaintiffs' argument was "quite stretched, such that few patentees would pursue it," defendants failed to establish "that this is the sort of 'extraordinary' case requiring fee-shifting"); cf. Lumen View Tech., LLC v. Findthebest.com, Inc., 24 F.Supp.3d 329, 336 (S.D.N.Y. 2014) (noting that "the most basic pre-suit investigation would have revealed" fact that defendant's patent claimed different technology than patent that plaintiff alleged was being infringed upon).

Something less than bad faith suffices to mark a case as exceptional. See Octane, 134 S.Ct. at 1757. In Yufa v. TSI Inc., No. 09-1315, 2014 WL 4071902, at *1 (N.D. Cal. Aug. 14, 2014), the plaintiff alleged that the defendant's predecessor-in-interest infringed on his patent "by manufacturing and selling wireless communication products believed to be utilizing technologies covered by the . . . Patent." Id. The parties' litigation was stayed as the United States Patent and Trademark Office ("PTO") reexamined plaintiff's patent. See id. This reexamination resulted in an addition of the words "without using a reference voltage" to one of plaintiff's patent claims. See id. The defendant argued that "Plaintiff should have realized that his claims were meritless after 'without using a reference voltage' was added to claim 6 during reexamination," as discovery provided to the plaintiff indicated that the defendant's products required a reference voltage. Id. at *3. That court held after extensive discovery and a patent tutorial, that "even a pro se litigant with Dr. Yufa's knowledge and experience should have known that he had no admissible evidence to support his claims of infringement rendering his lawsuit objectively baseless." Id. at *5. The case was found to be

5

exceptional and the plaintiff was ordered to pay attorney fees for the costs incurred after the patent tutorial.  Id.

### B. Unreasonable Manner in Which the Case was Litigated

"[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  See Octane Fitness, LLC, 134 S.Ct. at 1757.  Octane rejected the rigid framework of Brooks Furniture, but several post-Octane cases awarding fees have done so because of the losing party's serious misconduct.  See, e.g., Intellect Wireless, Inc. v. Sharp Corp., 45 F.Supp.3d 839, 853 (N.D. Ill. 2014) (finding misleading statements "coupled with affirmative, false declarations submitted to the PTO in order to procure patents, suggests the 'pattern of deceit' recognized by the Federal Circuit in affirming the finding of inequitable conduct"); Chalumeau Power Sys. LLC v. Alcatel–Lucent, No. 11-1175, 2014 WL 4675002, at *3 (D. Del. Sept. 12, 2014) (awarding attorney fees after finding plaintiff's suit to be frivolous and that plaintiff's motivation for filing "a frivolous lawsuit" was for "sole purpose of extorting a settlement fee"), aff'd, 611 Fed.Appx. 1008 (Fed.Cir. 2015); Cognex Corp. v. Microscan Sys., Inc., No. 13-2027, 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) ("[D]efendants' post-trial motions simply re-litigate issues that had already been decided by this Court during trial."), appeal dismissed, No. 14-1681 (Fed.Cir. Dec. 8, 2014).

A losing party's motivation for having raised a claim may negate the prevailing party's argument that the losing party engaged in unreasonable conduct.  There is a marked difference between frivolous litigation and a party refining trial strategy after the discovery period has ended.  See NXP B.V. v. Blackberry, Ltd., 58 F.Supp.3d 1313, 1319 (M.D. Fla.

2014), appeal dismissed, No. 15-1114 (Fed.Cir. Feb. 18, 2015). In NXP B.V., the defendant alleged that the case was exceptional because the plaintiff took a "kitchen sink approach" to the litigation, dropped three of its six claims prior to trial, provided weak evidence at trial, and engaged in unreasonable litigation that lacked factual and legal bases. See id. at 1318–24 (enumerating defendant's arguments as to why case should be deemed exceptional). The plaintiff argued that "Blackberry behaved like a defendant who knew this case would reach a resolution on the merits." Id. at 1318. The district court agreed that the litigation was "quite ordinary" in the sense that it was a "tightly contested patent case in which the parties engaged in a hard-fought battle." See id. (quotation and citation omitted).

The public policy objectives underlying certain statutory regimes may require parties to engage in litigation in order to achieve the statute's objectives. In the context of pharmaceutical patents, the Hatch-Waxman Act provides incentives for generic pharmaceuticals, as well as remedies for branded pharmaceuticals, in order to foster a competitive balance between the two. See generally Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (codified as amended in scattered sections of 21 U.S.C. and 35 U.S.C.); see also Janssen Pharm., N.V. v. Apotex, Inc., 540 F.3d 1353, 1355 (Fed.Cir. 2008) (citation omitted) ("The goal . . . is to better balance two competing interests in the pharmaceutical industry: '(1) inducing pioneering research and development of new drugs and (2) enabling competitors to bring low-cost, generic copies of those drugs to market.'").

The "mere fact that a company has filed an ANDA application or certification cannot support a finding of willful infringement for purposes of awarding attorney's fees". Glaxo

7

Grp. Ltd. v. Apotex, Inc., 376 F.3d 1339, 1350–51 (Fed.Cir. 2004); cf. Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc., 231 F.3d 1339, 1347 (Fed.Cir. 2000) (awarding attorney fees after finding case was exceptional because defendant had filed wholly unjustified ANDA certification and proceeded to litigate case).

## II. Legal Standards Applied Here
### A. Baseless Paragraph IV Certifications

Otsuka argues that the defendants' Paragraph IV certifications were baseless because the asserted obviousness and unenforceability theories were legally deficient and flawed. (Dkt. 453 at 10–24.) The Court will now consider Otsuka's specific objections.

#### 1. Obviousness Theory

Otsuka argues that the defendants' allegations that the '528 patent was obvious based upon the concept of structural similarity were legally erroneous because "mere structural similarity alone is not enough to establish a *prima facie* case of obviousness." (Id. at 11.) But Teva and Barr assert that: (1) their obviousness arguments were based on both the structural similarity of 2,3-dicholoro propoxy and unsubstituted butoxy, as well as the disclosed properties of the compounds; and (2) they presented documentary evidence and expert testimony to support their lead compound theory at trial, and "[w]hile this evidence did not carry the day, the evidence further demonstrates that Teva's position regarding the 2,3-dichloro propoxy was objectively reasonable." (Dkt. 437 at 12–15.)

During the renewed oral argument, Otsuka also argued that the bracketing theory set forth by Teva and Synthon was erroneous because a skilled artisan in the field would not pick two compounds and argue the resulting compound's obviousness due to the unpredictable

8

nature of pharmaceuticals. (Dkt. 490 at 64; see dkt. 453 at 11.) The defendants argued that the selection of compounds was based upon their disclosed properties as well as their structural similarity, and noted that under the law at the time of the certification letters, their burden was to show they could "make aripiprazole with a reasonable expectation of success in it having similar properties." (Dkt. 437 at 13.)

The Federal Circuit, in affirming our findings as to the validity and enforceability of the '528 patent, forcefully declared this case a "poster child for impermissible hindsight reasoning." See Otsuka Pharm. Co., Ltd. v. Sandoz Inc., 678 F.3d at 1296. While that ringing phrase certainly gives strength to Otsuka's argument for attorney fees, this Court found numerous substantive issues raised by the defendants requiring careful analysis in this Court's trial opinion. See generally Otsuka Pharm. Co., Ltd. v. Sandoz, Inc., No. 07-1000, 2010 WL 4596324 (D.N.J. Nov. 15, 2010). It was a high-stakes case involving patent coverage of a so-called blockbuster drug. But the factual and legal issues presented, as well as the procedural history and discovery, were similar to those frequently encountered in this expensive area of pharmaceutical patent law.

Otsuka makes similar arguments against the Paragraph IV certifications of the stayed defendants, claiming that the certifications filed by Sun, Synthon, and Zydus were baseless and filed in bad faith because their arguments were "likewise based on nothing but a structural similarity contention." (Dkt. 453 at 18.) The stayed defendants argue that their actions are not exceptional because they did not add to Otsuka's litigation costs. (See, e.g., dkt. 472 at 10; dkt. 473 at 10; dkt. 474 at 5.) Moreover, the stayed defendants argue that no court has

9

concluded that a baseless Paragraph IV certification alone renders a case exceptional under § 285.  (See, e.g., dkt. 472 at 11; dkt. 473 at 10; dkt. 474 at 5.)

### 2. Unenforceability Theory

Otsuka asserts that Teva's unenforceability theory, i.e., that Otsuka withheld information from the PTO "by failing to cite DE '105 during examination of the '528 patent" and "falsely characterized the stereotypy test as a test for antipsychotic potency", was based upon unfounded speculation.  (Dkt. 453 at 14.)  Otsuka argues that Teva did not argue these positions at trial "because Teva knew that they were unsupportable," rendering this case exceptional.  (Id. at 15.)  Teva asserts in its defense that its certification "candidly acknowledged that it would need discovery to determine whether the defense could be established."  (Dkt. 437 at 24.)  Contrary to Otsuka's assertion that Teva had shifting positions at trial, Teva asserts that its inequitable conduct arguments changed because "[d]iscovery revealed what Teva reasonably believed to be stronger inequitable conduct defenses".  (Id.)  Moreover, Teva emphasizes that the main themes of the arguments remained the same.  (Id. at 27.)

Sun, Apotex, and Zydus argued that the '528 patent was unenforceable because the Banno article and Oshiro paper were prior art conflicting with Otsuka's position during prosecution of the '528 patent.  (See, e.g., dkt. 432 at 29–33; dkt. 452 at 16 (sealed).)  Apotex argues that it had "fair grounds" for litigating inequitable conduct based upon the law at the time, which required "showing only that a 'reasonable examiner' would have regarded the undisclosed information to be 'important' to deciding whether to allow the patent application."  (Dkt. 432 at 29.)

10

Otsuka also notes that no party raised the inequitable conduct arguments before the Federal Circuit on appeal after this Court found that intent to deceive was not established. (Dkt. 453 at 30.) Teva argues that the decision to not appeal "does not mean that the arguments presented to the trial court on intent were objectively baseless" and the defendants "should not be faulted for picking what it perceived to be its best appellate arguments." (Dkt. 437 at 25.)

### B.    Unjustified and Vexatious Litigation

Otsuka argues that the defendants engaged in unjustified and vexatious litigation by way of excessive discovery, an inability to narrow positions during litigation, a refusal to drop baseless arguments, and a radical shift in their positions. (Dkt. 453 at 24–31.)

Otsuka argues that: (1) the discovery requested by the defendants was "extensive and disproportionate"; and (2) it produced over 800,000 pages of documents, only to have the defendants admit "fewer than 10 total documents at trial". (Id. at 24–25.) Teva argues that "[t]his is the case in virtually every ANDA litigation," wherein the patent holder possesses crucial data and the ANDA filers "possess[] only minimal relevant discovery concerning their ANDAs." (Dkt. 437 at 26.) Apotex argues that this extensive discovery was permitted per the Magistrate Judge's scheduling order, and notes that the conduct of all defendants during pretrial and trial was "exemplary". (Dkt. 432 at 35–36.)

As to the defendants' alleged inability to narrow their arguments, Otsuka argues that the defendants' § 282 notice, which indicated an intention to rely upon 806 "patents and publications" at trial, was a "frivolous and vexatious litigation tactic" as the defendants only cited to 30 at trial. (Dkt. 453 at 26.) Teva, Barr, and Apotex note that a comprehensive

11

response was necessary because a § 282 notice requires "identification of 'any' prior art references" that were considered "relevant", and that they nevertheless considered themselves bound by the lesser number of references they specified in the Pretrial Order. (Dkt. 437 at 27.) Apotex also notes that Otsuka fails to cite a case in which attorney fees were rewarded for notices that disclosed more relevant prior art references than were cited at trial. (Dkt. 432 at 36.)

Otsuka alleges that the defendants maintained baseless arguments in discovery, only to drop or change the arguments at trial. (Dkt. 453 at 27.) The defendants acknowledge that new arguments were developed throughout the course of litigation as new evidence was developed, but note that this is typical of any litigant. (Dkt. 490 at 30–31.) They emphasize that the basic positions they stated in their Paragraph IV filings remained unchanged. (Id.)

### C. Analysis

The Court, having considered the parties' arguments and the totality of the circumstances of this case, finds that Otsuka has not established by a preponderance of the evidence that this case is exceptional or anything besides characteristic Hatch-Waxman litigation, despite its inherent size and complexity. See Octane Fitness, LLC, 134 S.Ct. at 1756 (analogizing § 285 to Lanham Act's definition of "exceptional" in context of attorney fees to mean "uncommon" or "not run-of-the-mill").

#### 1. Substantive Strength of Defendants' Arguments

The Court acknowledges that Otsuka was the prevailing party on the issues of the validity and enforceability of the '528 patent. (Dkt. 392 at 71.) While the defendants' arguments "did not carry the day," this Court finds that their arguments did not rise to the

level of being "exceptionally meritless". Octane, 134 S.Ct. at 1757. The Court will consider the strength of the defendants' arguments below.[5]

As to the defendants' obviousness argument for the '528 patent's validity, the Court found merit in the argument that a person of ordinary skill in the art would have knowledge of examining structure-activity relationships through the use of biological tests. (Dkt. 392 at 17 ("[E]vidence at trial indicated the necessity of such testing in the course of antipsychotic drug development.").) When considering the scope and content of prior art, we agreed with the defendants that the Nakagawa Declaration and Wise Poster could be considered prior art, against Otsuka's contention that these materials were not printed publications under 35 U.S.C. § 102(b). (Id. at 19–20, 28.)

Although the defendants did not establish that the '528 patent was invalid as obvious, we do not find that their obviousness arguments were "exceptionally meritless." See Octane, 134 S.Ct. at 1757. This case can be distinguished from post-Octane cases wherein the losing party pursued frivolous claims that an adequate pre-trial investigation could have uncovered. See, e.g., Lumen View Tech., LLC, 24 F.Supp.3d at 335. The defendants here put forth some good faith argument in favor of their positions. The Court finds that this case is most analogous to those post-Octane cases in which the losing party could not meet the burden of

---

[5] It is not necessary to analyze each argument posited by the parties. See Stragent, LLC v. Intel Corp., No. 11-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) ("[T]he Supreme Court did not intend to burden the district court with reviewing in detail each position . . . taken in the course of litigation by the losing party.") This Court will not consider in depth Otsuka's assertion that the defendants' inequitable conduct arguments were baseless because they changed these arguments at the time of trial and they did not raise these arguments on appeal to the Federal Circuit. (Dkt. 453 at 31.) The Court does not find anything frivolous about the defendants' decision to change their arguments based upon discovery, or in their decision to not raise arguments on appeal to the Federal Circuit.

the arguments, but the arguments did not "descend to the level of frivolous argument or objective unreasonableness" pursuant to § 285. See Gametek LLC v. Zynga, Inc., No. 13-2546, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (denying motion for attorney fees because losing party's conduct fell short of "conduct that has been found to justify fee-shifting even post-Octane").

### 2. Unreasonable Manner in Which the Case was Litigated

The Court finds that all parties litigated this case reasonably, and that it was a fairly typical Hatch-Waxman case on the whole. Otsuka contends that the defendants litigated this case in an unreasonable manner due to their excessive discovery demands, baseless arguments, and changing positions. (Dkt. 453 at 24–31.) The Court disagrees with Otsuka's assessment of the parties' conduct for the following reasons.

The Court agrees with the defendants that the discovery requested here was typical of any Hatch-Waxman case in which "an NDA holder possesses voluminous relevant evidence concerning its NDA and related research and development, whereas the ANDA filers possess[] only minimal relevant discovery". (Dkt. 437 at 26.) Otsuka has failed to show how the defendants' discovery requests amounted to unreasonable litigation. "One of the purposes of discovery . . . is 'to allow the [defendant] to pin down the [plaintiff's] theories . . . , thus confining discovery and trial preparation to information that is pertinent to the theories of the case.'" NXP B.V., 58 F.Supp.3d at 1319 (citation omitted). Here, the defendants acted reasonably based upon their discovery findings. The defendants concede that some of their

14

arguments shifted or changed after discovery. (Dkt. 437 at 24.)[6] This does not render a case exceptional; rather, it illustrates that the defendants properly used discovery throughout the course of litigation as a means to refine or change their arguments.

It is for similar reasons that we also find Otsuka's arguments regarding the defendants' inability to narrow arguments and drop "baseless arguments" unpersuasive.[7] A review of post-Octane cases reveals that "most cases awarding fees continue to involve substantial litigation misconduct." See Small, 2014 WL 5463621, at *4. District courts have awarded attorney fees in cases where the losing party made false statements to the PTO, used litigation as a means to extort a larger settlement, or used motion filings as a means to re-litigate what was presented at trial. See, e.g., Intellect Wireless, Inc., 45 F.Supp.3d at 853; Chalumeau Power Sys. LLC, 2014 WL 4675002, at *3; Cognex Corp., 2014 WL 2989975, at *4. The Court notes that while it is not limited to these examples of unreasonable litigation, they are nevertheless instructive as to what may constitute an exceptional case under Octane.

As compared to the above-cited cases, the conduct of the parties here was "quite ordinary". See NXP B.V., 58 F.Supp.3d at 1318. Otsuka alleges that the defendants' arguments "continued to grow, rather than narrow, as the case proceeded." (Dkt. 453 at 26.)

---

[6] Related to Otsuka's contention that the defendants engaged in vexatious discovery is the assertion that the defendants "radically" shifted their position throughout the course of litigation. (Dkt. 453 at 29.) The defendants concede that some of their theories changed from what was first asserted in their Paragraph IV certifications. (Dkt. 437 at 24.) ("Discovery revealed what Teva reasonably believed to be stronger inequitable conduct defenses, which Teva pursued.") The defendants argue, and this Court agrees, that the parties' main arguments of non-infringement, invalidity of the '528 patent, and unenforceability of the '528 patent remained the same throughout the course of the litigation. (Id. at 27.)

[7] The Court has previously reviewed Otsuka's assertion that the defendants' arguments were baseless herein in Section II.A.

Otsuka cites as support the fact that the defendants initially indicated their intent to rely on about 300 prior art references at trial, which then increased to 806 references a month before trial. (See id.) Otsuka argues that the defendants' use of only 30 of these documents at trial was "the definition of a frivolous and vexatious litigation tactic." (Id.) This Court disagrees. The significant reduction in the amount of documents that the defendants relied upon at trial leads this Court to draw the opposite conclusion of that which Otsuka is asserting, namely that the defendants narrowed their arguments such that they did not need to rely on a majority of the references identified in their § 282 notice.

Otsuka argues that the Octane factors of deterrence and compensation weigh in favor of an exceptional case holding. (Dkt. 471 at 12–13.) As this Court has noted, this case was a characteristic Hatch-Waxman pharmaceutical patent case. See Octane Fitness, LLC, 134 S.Ct. at 1756. A fee award with a deterrent impact on generic pharmaceuticals and a compensatory effect on branded pharmaceuticals, particularly in a typical patent case, would run afoul of the policies underlying the Hatch-Waxman Act. See Small, 2014 WL 5463621, at *4 (noting "need for the deterrent impact of a fee award is greater where there is evidence that the plaintiff is a 'patent troll' or has engaged in extortive litigation").

The Supreme Court has directed that we exercise our sound discretion and look to the totality of the circumstances when deciding whether this case is exceptional under § 285. See Octane, 134 S.Ct. at 1756. We do not believe that Otsuka has shown by a preponderance of the evidence that the defendants' positions stand out from others with respect to the substantive strength of their arguments, or that the defendants litigated in an unreasonable manner. See id. at 1756–57.

## CONCLUSION

For the reasons stated above, the motion for an award of attorney fees pursuant to 35 U.S.C. § 285 is denied. The Court will issue an appropriate order.

  s/ Mary L. Cooper  
**MARY L. COOPER**
United States District Judge

Dated: October 9, 2015